NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

```
_____
                                :
GEORGE LUPINACCI,               :
                                :   Civil Action No. 13-5578 (RMB)
             Petitioner,        :
                                :
     v.                         :
                                :
STATE OF NEW JERSEY,            :
                                :        OPINION
             Respondent.        :
_____:
```

**BUMB**, District Judge:

This matter comes before the Court upon Petitioner's submissions of his amended § 2254 petition and $5 filing fee; those submissions prompted restoration of this matter to the Court's active docket. See Docket Entries Nos. 4 and 6.

Petitioner is a state inmate whose parole eligibility date coincides with his September 29, 2017, maximum release date. See https://www6.state.nj.us/DOC_Inmate/details?x=1362838&n=0. The state courts described the events underlying his conviction and state litigation process as follows:

> The charges stem from [Petitioner] robbing a gas station worker at knife-point . . . and [at a later date,] forcibly taking the purse of a woman . . . . On the return day of his [suppression motion, Petitioner] decided to accept a plea offer that had previously been proposed by the State. After a long colloquy with the trial judge, [Petitioner] indicated that he . . . understood [the consequences of taking the plea. He] confirmed under oath at the plea proceeding that . . . he had threatened the gas station attendant with a knife, and taken money from him. [Petitioner] further admitted to forcibly taking a purse

from the second victim [at a later date].  After these
factual admissions were placed on the record, [the trial
judge] observed that, although [Petitioner] had agreed to
plead guilty, he had not signed the portion of the plea form
addressing the No Early Release Act ("NERA") . . . .
[Petitioner] asserted that he refused to sign that portion
of the plea form because he thought that NERA was an unjust
law. [The judge] informed [him] that . . . NERA [was found
to be] a constitutional law. . . .  The judge further
indicated that, . . . if [Petitioner] had "knowingly and
voluntarily ... admitted to the crimes to which [he was]
pleading," there were very few legitimate grounds [to attack
the application of NERA to Petitioner]. The judge continued:

| | |
|---|---|
| [Judge:] | Here's the deal.... This plea is contingent upon you freely and voluntarily accepting it without hesitation.  If . . . you're hesitating and . . . quibbling about this, I'm not going to accept [your guilty plea] because it raises a question as to whether you're doing this freely and voluntarily. But just understand that [this] decision is yours . . . . |
| [Petitioner:] | Exactly. |
| [Judge:] | If you decide that you don't want this plea, fine.  Then, the plea is off the table and . . . we move to the next step [proceeding toward the trial]. |
| [Petitioner:] | And I can go down the tubes then, big time. . . . |
| [Judge:] | Do you [feel that anyone is] forcing you to [take the plea]? |
| [Petitioner:] | It's hard to say. |
| [Judge:] | Well, it's either yes or no. |
| [Petitioner:] | The thing is if I don't go for the deal, I'm going to get screwed in plain English. |
| [Judge:] | Well, no.  Listen. If you don't take the plea offer, there's a [trial] process [that would afford you constitutional protections]. |
| [Petitioner:] | Right. |
| [Judge:] | [The choice is yours: you can take the plea or] you can go to trial.  That's what we were here to do today to get this case ready for trial [because you filed a suppression hearing with an eye on the trial].  At trial, you could win everything— |
| [Petitioner:] | Or lose everything. |

2

```
[Judge:]        -or lose everything or something in between.
                You had a motion to separate your counts in
                the indictment.  If we separated some of the
                counts in the indictment, like for example
                the robberies at the gas station from the
                purse snatching, . . . you could end up with
                different crimes . . . .
[Petitioner:]  [But I also may get convicted] twice, [that's
                what] I'm facing.
[Judge:]        Exactly.
[Petitioner:]  So, [I decided that] I'm cutting my losses.
                And taking the [plea] deal.
```

The trial judge then asked Petitioner again if he was ready

to proceed with the plea, and Petitioner responded that he was

"positive" that he wanted to proceed with the plea.  On the same

day, Petitioner signed the remainder of the plea form, pleading

guilty to one count each of first-degree robbery and

second-degree robbery.  Petitioner initially circled "No" next to

the question asking if he was satisfied with his lawyer's advice.

Petitioner informed the judge that he and his attorney "didn't

have very many meetings and the attorney was very busy" and the

pre-trial process was slow. The judge explained that . . . "the

State had complete control over that."  After that, Petitioner

agreed on the record that his trial attorney was a "good, able,

and competent lawyer."  Petitioner further agreed that the

judge's description of the ramifications of accepting or denying

a plea was substantially the same explanation he received from

his attorney.  Petitioner stated that he was satisfied with what

his attorney had told him.  Petitioner then changed his answer on

the plea form to indicate that he was satisfied with his lawyer's

advice, informing the judge that he was "freely and voluntarily" doing so.  Petitioner's attorney then asked him if he understood all the questions asked of him on the plea form, if he understood the charges against him, if he understood that he was giving up his right to a trial, if he understood that he was waiving his right to remain silent and his right to cross-examine witnesses, and if he understood the penalties he faced as a result of a conviction.  Petitioner answered all of those questions in the affirmative.  Based on these assertions, the judge found that Petitioner understood the nature of the charges, that he had received the advice of competent counsel, and that Petitioner was not coerced into entering a plea.  Accordingly, the judge accepted Petitioner's guilty plea to the two robbery offenses.

During a following proceeding, the judge sentenced Petitioner to fifteen years.  During the sentencing hearing, the subject of different plea negotiations arose.  Since, before the indictment, Petitioner had been offered a plea agreement in which the State would consent to a term of ten years for both robbery incidents.  Petitioner disputed the State's position that such pre-indictment offer was "clearly rejected" by Petitioner.  He alleged that, prior to indictment, his attorney had advised him of that initial plea offer, but, instead of rejecting that initial offer, Petitioner told his attorney that he would "get back to her in a couple of hours."  He contended that, despite

4

calling and writing letters indicating that he wanted the offer, his attorney did not respond to him.  The following colloquy took place:

[Judge:]       Mr. Lupinacci, it's really only at the eleventh hour that you're bringing up the issue about the [initial] plea offer, and it is consistent with the way that you have approached this case. . . . [W]e went through [a full plea discussion] back . . . at the plea hearing.

[Petitioner:]  Right.

[Judge:]       You [are now] trying to enhance your position so you can get a lesser plea, and I'm not criticizing you for trying to do everything you can to minimize your exposure, but what I am criticizing you for is that at no time until just basically now [you were] raising the issue about whether your attorney accepted your calls [when you were, allegedly, attempting] to convey your desire to accept that [initial] plea offer.  You didn't even raise [that issue] in the presentence report, you didn't raise it [with me during] the plea hearing, in fact, we had been in court numerous times and that issue was never raised.  [Now, y]ou [are] say[ing] you told [your] counsel [about it].

[Petitioner:]  Many times.

[Judge:]       Well, the fact of the matter is I gave you every opportunity to raise it with me and you were not the least bit reluctant to raise many issues with me regarding your ability to plead guilty and the factual basis surrounding it and the circumstances of how you got to where you are.  But nowhere in all of those opportunities is there anything that would indicate that you had a plea offer that you accepted that somehow got lost.  And those words only had to come from your mouth.

The trial judge then proceeded with the sentencing, declining to accept Petitioner's belated argument that his plea

5

should be retracted.  See State v. Lupinacci, 2013 WL 275896, at

*1-4 (N.J. Super. Ct. App. Div. Jan. 25, 2013).

Petitioner's appeal as to the length of his sentence was

affirmed by the Appellate Division, and the New Jersey Supreme

Court denied certification.  See id. at *4; see also State v.

Lupinacci, 200 N.J. 207 (2009).  On July 6, 2009, Petitioner

filed an application for post-conviction relief ("PCR").

With regard to the plea issue, Petitioner "maintained before

the state court that his plea was not made knowingly and

voluntarily because of the ineffective assistance of counsel."

Lupinacci, 2013 WL 275896, at *4.  In an amended pro se PCR

application, Petitioner "further alleged that his trial counsel

failed to adequately explain the elements of the charges."  Id.

Oral argument was heard on the PCR petition before a different

state judge who "denied the PCR application, finding no need for

an evidentiary hearing."

Petitioner appealed.  The Appellate Division affirmed

the PCR judge's findings, stating:

> [W]e affirm the denial of . . . PCR application,
> substantially for the sound reasons set forth in [the
> PCR judge's] opinion. . . .  It is obvious from the
> record that [Petitioner] has failed to satisfy his
> burden under Strickland v. Washington, 466 U.S. 668,
> 687 (1984), to demonstrate that (1) his [trial]
> counsel's performance was deficient, and (2) the
> deficient performance actually prejudiced his defense.
> . . .  We amplify [the PCR judge's] opinion with only a
> few brief comments. . . . [B]ased upon the transcribed
> colloquy . . . quoted [supra, we conclude that

6

> Petitioner] manifestly realized exactly what he was
> doing when he agreed on the record to . . . take the
> plea offer [discussed at the plea hearing, not the one
> which was first mentioned at the sentencing hearing.
> We see no basis for] allow[ing Petitioner] to withdraw
> his guilty plea [since, <u>inter</u> alia, Petitioner never]
> claimed that he [was] innocent, and the voluntariness
> of his plea is easily established by [his] lengthy
> colloquy with the trial judge.

<u>Id.</u> at *5.

Having his application for certification as to his PCR

application denied by the Supreme Court of New Jersey, <u>see</u> <u>State</u>

<u>v. Lupinacci</u>, 214 N.J. 235 (July 19, 2013), Petitioner commenced

the instant matter seeking to proceed <u>in forma pauperis</u>.   <u>See</u>

Instant Matter, Docket Entry No. 1.  This Court denied his <u>in</u>

<u>forma pauperis</u> application because Petitioner's balance was

$320.53, and directed Petitioner to prepay the $5 filing fee.

<u>See</u> Docket Entry No. 3, at 2 (detailing the Local Rule under

which the inmates having $200 or over on their prison accounts

are barred from proceeding as paupers in habeas matters).

In addition, this Court provided Petitioner with the

following substantive guidance:

> Petitioner was convicted pursuant to a guilty plea.
> However, in his Petition, Petitioner raised  challenges
> attacking his plea, as well as other challenges,
> unrelated to his plea, e.g., challenges related to his
> arrest, his confession, admission of evidence, etc.  A
> litigant who is seeking federal habeas relief with
> regard to the conviction arising from a plea agreement
> cannot raise any claims except for the duly-exhausted-
> in-state-fora challenges to that plea.  "[A] plea of
> guilty, voluntarily and understandingly made,
> constitutes a waiver of nonjurisdictional defects and

7

defenses, including claims of violation of constitutional rights prior to the plea." <u>Ramdass v. Angelone</u>, 530 U.S. 156, 167 (2000) (quoting <u>Rivers v. Strickland</u>, 264 S.C. 121, 124(1975)); <u>Drumm v. Parke</u>, 895 F.2d 1412 (6th Cir. 1990) (relying on <u>Tollett v. Henderson</u>, 411 U.S. 258, 266-67 (1973)) ("[t]he law is clearly established that a defendant who enters a guilty plea waives all nonjurisdictional defects, including alleged violations of constitutional rights"). Therefore, in this case, Petitioner has waived any claims challenging his arrest, confession, etc., as well as ineffective assistance of counsel claims relating thereto. <u>See</u> <u>United States v. Wooten</u>, 98 F. App'x 172, 177 (3d Cir. 2004) (citing <u>Tollett</u>, 411 U.S. at 267) (a defendant who pleads guilty waives the right to appeal independent claims relating to the deprivation of constitutional or non-constitutional rights that occurred prior to or independently of the entry of the guilty plea); <u>see also</u> <u>United States v. Negron</u>, 75 F. App'x 83, 84 (3d Cir. 2003) (citing <u>United States v. Broce</u>, 488 U.S. 563 (1989) ("Since a guilty plea constitutes an admission that the defendant committed the charged crimes, any claim that is inconsistent with an admission of guilt generally is waived by the plea")); <u>accord</u> <u>Siers v. Ryan</u>, 773 F.2d 37, 42 (3d Cir. 1985) ("It is crystal clear that a prisoner may attack only the voluntary and intelligent character of the guilty plea"), <u>cert.</u> <u>denied</u>, 490 U.S. 1025 (1989). Hence, in the event Petitioner submits his filing fee, he should file an amended pleading raising solely his challenges attacking the voluntariness of his plea and assistance of his counsel solely as to that plea. Petitioner shall also detail the *exact facts upon which he bases his challenges* (which facts should be duly raised before the state courts). <u>See</u> 28 U.S.C. § 2254 Rule 2(c) (a § 2254 petition must "state the facts supporting each ground"). Here, Petitioner asserted that his counsel gave him "bad advise and did not give a full and precise scenario of the process." In his amended pleading, Petitioner shall specify what advice he obtained from his counsel, why that advise was "bad," and what were the omissions in the counsel's statements that amounted to errors of constitutional magnitude.

<u>Id.</u> at *2-4 (original ellipses and citations to docket entries

omitted, footnotes 1 and 2 incorporated in the main text,

emphasis supplied).[1]

    In response, Petitioner submitted his $5 filing fee and the

amended pleading at bar.  See Docket Entry No. 4.  He raises four

Grounds:

> Ground One:    Denial of PCR was not warranted without a[n
>                e]videntiary [h]earing . . . .
> Ground Two:    Ineffective [a]ssistance of [c]ounsel that
>                d[e]prived the [P]etitioner of his Sixth
>                Amendment [right] to [e]ffective [a]ssistance
>                of [c]ounsel. Supporting facts: Petitioner
>                did not meet with [his trial c]ounsel but on
>                a few occasions.  The [c[ounsel gave bad
>                advi[c]e on the situation and did not give
>                the whole scenario of the process if a plea
>                agreement [was] accepted or not accepted.
>                The [P]etitioner was not afforded the full
>                understanding of the situation to make a
>                reasonable decision.  Counsel pleaded with
>                [P]etitioner to take [the] plea agreement,
>                [she] said he would lo[se] at trial and
>                [would have to] do a[]lot of unnecessary
>                [prison] time.  Furthermore, there was a pre-
>                indictment agreement that was not followed by
>                the [p]rosecution/[c]ourt[] or [trial
>                c]ounsel, and this violation was not
>                challenged.
> Ground Three:  Miranda violation.
> Ground Four:   The [t]rial [c]ourt refused to allow
>                evidentiary hearing.

Id. at 5-10.

---

    [1]  In addition, this Court provided Petitioner with a notice
under Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), so to ensure
that Petitioner's amended pleading would marshal all his claims,
if any, attacking the nature of his plea and counsel's assistance
in connection with that plea.   See Docket Entry No. 3, at 4.

As relief, Petitioner requested that the plea agreement be rescinded and sentence imposed be vacated.  Petitioner further requests that the State return to its pre-plea position.  In the alternative, Petitioner requested an evidentiary hearing. Id. at 15.  Petitioner's challenges merit no habeas relief.

To the extent Petitioner is challenging his confession or the procedure employed at the PCR hearing, Petitioner's Grounds are simply not cognizable in § 2254 review since these claims have no relation to the issue of whether his guilty plea before the trial judge was voluntary, intelligent and knowing.  This critical point was already extensively detailed by this Court to Petitioner in the Court's prior decision, see Docket Entry No. 3, at 2-4, and thus, requires no recital.  Therefore, Petitioner's application for habeas relief as to his Grounds One and Three (as well as to his Ground Four, which simply paraphrases his Ground One) will be denied as precluded by his plea.  See Broce, 488 U.S. 563 (1989); Siers, 773 F.2d at 42.  The sole Ground amenable to this Court's § 2254 review is Petitioner's cluster of challenges attacking his guilty plea.

Petitioner's umbrella Ground Two raises, effectively four separate allegations, i.e., that: (a) Petitioner's counsel did not meet with him as often as Petitioner desired, and Petitioner believes that such insufficient frequency of contacts rendered his plea defective; (b) his plea was defective because, in

10

hindsight, he believes that his counsel gave him "bad" advice
(when she recommended to him to plead guilty and pointed out
that, if Petitioner proceeded to trial, he was likely to be
convicted on both offenses and, thus, he might be sentenced to a
much longer term potentially consisting of two consecutive
sentences); (c) that his plea was defective because was "not
afforded the full understanding of the situation to make a
reasonable decision"; and (d) that his plea was defective because
he believes that the initial plea offer (which he mentioned only
at his sentencing) has to, somehow, negate the plea offer which
he actually accepted.[2]  Docket Entry No. 4, at 17.

Each of Petitioner's positions is unavailing.  To the extent
he seeks an evidentiary hearing before this Court hoping to
locate evidence upon which he could build his ineffective
assistance of counsel claim, such "explorations" fall outside the
scope of federal habeas review.  The standard of § 2254 review is
long-established, and it sets forth a narrowly-tailored test.
See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) ("28
U.S.C. § 2254 sets several limits on the power of a federal court
to grant an application for a writ of habeas corpus on behalf of

_____

    [2]  Appended to the above-mentioned "(c)" allegation is
Petitioner's request for an evidentiary hearing before this
Court: so Petitioner would be able to "explore the evidence" and
locate a fact upon which he could build his ineffective
assistance of counsel claim.  Docket Entry No. 4, at 15.

11

a state prisoner"). Section 2254(a) permits a federal court to entertain only claims alleging that a person is held in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The statute further limits a federal court's authority to grant habeas relief by providing that, when a state court has adjudicated a petitioner's federal claim on the merits, a district court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts *in light of the evidence presented in the state court proceeding*.'" Parker v. Matthews, 132 S. Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d), emphasis supplied).

A decision is "contrary to" a Supreme Court holding, within the meaning of 28 U.S.C. § 2254(d)(1), if: (a) the state court outright "contradicts the governing law set forth in [the Supreme Court] cases"; or (b) the state court "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).[3] Thus, the

---

[3] Moreover, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect

standard posed by federal habeas review "is . . . difficult to meet, [since it is a] highly deferential standard for evaluating state-court rulings, [and that standard] demands that state-court decisions be given the benefit of the doubt." Pinholster, 131 S. Ct. at 1398 (citations and internal quotation marks omitted).

In line with Pinholster, federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Delaware Corr. Center, 295 F.3d 361, 368 (3d Cir. 2002); see also 28 U.S.C. § 2254(e)(1).[4]

Read jointly, these principles bar federal courts sitting in Section 2254 review from conducting evidentiary hearings aiming to locate the facts that were *not* presented to the state courts. See Pinholster, 131 S. Ct. at 1398-1401.[5]

———————————————

application of federal law." Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (quoting Williams, 529 U.S. at 410).

[4] Notably, a credibility determination made by the state courts qualifies as a factual determination that could be offset only by clear and convincing evidence marshaled by § 2254 litigant in the federal court. See Rice v. Collins, 546 U.S. 333, 341-42 (2006) ("habeas review [cannot] supersede the trial court's credibility determination").

[5] Correspondingly, if this Court rules on the basis of the facts *not* presented to the state courts, this Court would incorrectly conduct its § 2254 analysis: it would violate its obligation to determine whether the state court's findings were an unreasonable application of law to the facts *presented to the state courts*. Moreover, this Court cannot indulge Petitioner's

Petitioner's reference to the initial plea offer (which he mentioned to his trial court during the sentencing hearing when he alleged that he eventually decided to accept that initial offer but was unable to convey his alleged election to his counsel, and that offer expired) is *inapposite* to the scope of this Court's review.[6]   Therefore, Petitioner's allegations based on the initial plea offer allegedly extended cannot qualify as a basis for § 2254 relief, and these allegations will be dismissed.

Furthermore, Petitioner's displeasure with the frequency of his meetings with his trial counsel is inapposite to his attack

---

desire to search for evidence establishing a violation of his rights: it is Petitioner's obligation to present convincing evidence.

[6]   This is so because, here, Petitioner may attack only *the guilty plea he actually took*.   See <u>Broce</u>, 488 U.S. 563 (1989); <u>Siers</u>, 773 F.2d at 42.   Hence, the alleged initial offer could be relevant to this Court's analysis only if Petitioner asserts evidence *actually showing* that he: (a) did not know that he was accepting the offer to which he pled guilty because (b) he was *misled* by the State or trial judge, or Petitioner's counsel into believing that he was accepting the initial offer. Here, the record is abundantly clear that he knew which particular plea offer he was accepting: Petitioner carefully studied all terms of the *superceding* offer and even attempted to accept *that* offer only partially: by expressing his displeasure with the fact that NERA would be applicable to him under that *superseding* offer. The amended petition at bar does not provide this Court with a single fact establishing – or even suggesting – that Petitioner was unclear about which particular plea offer he was accepting at the time when he entered his guilty plea.   Thus, while Petitioner may regret, in retrospect, that he did not accept the initial offer immediately when it was conveyed to him by his counsel, Petitioner's remorse over that lost opportunity cannot qualify as a basis for establishing that his acceptance of the superseding offer was not intelligent, knowing or voluntary.

on his guilty plea.   See Cox v. Ricci, 2010 U.S. Dist. LEXIS 115711, at *16 (D.N.J. Oct. 29, 2010) (citing United States v. Olson, 846 F.2d 1103, 1108 (7th Cir. 1988) (expressly finding that, under the Strickland test, there is no established "minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel").[7]   Accordingly, Petitioner's allegations based on the allegedly insufficient frequency of his meetings with his counsel cannot merit § 2254 relief.

The foregoing leaves this Court solely with Petitioner's allegations that: (a) in hindsight, he believes that his counsel gave him "bad" advice; and (b) he is of the impression that he was "not afforded the full understanding of the situation to make a reasonable decision." Both claims are without merit.

---

[7]   An effective counsel may succinctly convey all required information to his client during a single meeting, while an ineffective attorney may have daily meetings with his client and yet fail to convey the required information.   See Ware v. United States, 2014 U.S. Dist. LEXIS 50310, at *29 (D.N.J. Apr. 11, 2014) ("defendant cannot establish ineffective assistance of counsel by asserting a mechanical calculation of alleged meetings and then, self-servingly, declaring the amount of such alleged meetings insufficient") (quotation marks and citation omitted); accord Layne v. Moore, 90 F. App'x 418 (3d Cir. 2004) (affirming dismissal of a claim asserting ineffective assistance on the grounds that counsel met with the defendant only three times); Brownlee v. Haley, 306 F.3d 1043 (11th Cir. 2002) (finding that counsel was not ineffective even if he met with the defendant only twice, and each meeting lasted only ten minutes).

Petitioner's hindsight displeasure with his counsel's advice fails to meet even the first prong of the <u>Strickland</u> test.  <u>See Strickland</u>, 466 U.S. at 689 (the litigant's self-serving speculation based on hindsight are insufficient to make the required showing: the choice as to what advice to make falls squarely within the realm of trial strategy and is thus subject to a strong presumption that the decision constituted effective advocacy); <u>Smith v. Gaetz</u>, 565 F.3d 346, 354 (7th Cir. 2009) ("It is not this court's role to play Monday-morning quarterback concerning [the counsel's choice between] two . . . strategies"). Tus, Petitioner's allegations based on his hindsight opinion that he received a "bad" advice will be dismissed.

Finally, Petitioner's self-serving statement that he was "not afforded the full understanding of the situation to make a reasonable decision" is insufficient as pled since it offers this Court nothing but a bold conclusion.  "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." <u>Hill</u>, 474 U.S. at 56 (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970)).  Hence, to mount a viable attack on the sufficiency of guidance provided by the defense counsel in connection with the defendant's plea, the defendant must show that: (a) the counsel

16

failed to inform the defendant of "direct" consequences of the plea or conveyed that information in the terms that the defendant could not understand, see United States v. Norvell, 729 F.3d 788, 797 (8th Cir. 2013); United States v. Ocasio-Cancel, 727 F.3d 85, 89 (1st Cir. 2013); and (b) such deficiency caused the defendant to take the plea and give up his intention to insist on proceeding to trial.  See Hill, 474 U.S. at 58-59 (1985) ("the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have *insisted* on going to trial") (emphasis supplied). Important here, when the defendant does not deny his involvement in the crime he plead guilty to, his "failure to disavow those charges supports a finding that he would have been convicted had the case gone to trial" and his plea did not cause him prejudice. Cedeno v. United States, 455 F. App'x 241, 245 (3d Cir. 2011) (citing Premo v. Moore, 562 U.S. 115 (2011), for the observation that a defendant's failure to deny involvement in the underlying crime "counsels against a finding of prejudice").

Here, Petitioner failed to make all these showings.  To start, Petitioner expressly addressed the issue of the clarity of the explanations he received from his counsel (and then from the trial judge) during his plea hearing.[8]  Thus, Petitioner's

---

[8]  See Lupinacci, 2013 WL 275896, at *2-3 ("[Petitioner] initially circled 'No' next to the question asking if he was

position cannot turn on an insufficient clarity of explanations:

even if this Court were to hypothesize that something was left

unexplained by Petitioner's counsel, the trial judge removed all

doubts from Petitioner's mind by offering him another round of

explanation.  Thus, those explanations rendered Petitioner's plea

knowing, intelligent and voluntary.[9]

    Also, Petitioner himself verified that he was duly informed

of all direct consequences of his plea and understood every

aspect of those consequences.  See id. at *3 ("[His] trial

attorney [expressly] asked him [for the record] if he understood

all the questions asked of him on the plea form, if he understood

the charges against him, if he understood that he was giving up

his right to a trial, if he understood that he was waiving his

_____

satisfied with his lawyer's advice.  [But then, being explained
by the trial judge that the length of pre-pleading process did
not depend on the defense attorney's actions, Petitioner] agreed
on the record that his trial attorney was a 'good, able, and
competent lawyer.' [Petitioner] further agreed that the judge's
description of the ramifications of accepting or denying a plea
was substantially the same explanation he received from his
attorney, although the judge explained it 'much more easier' and
'probably with more respect.' [Petitioner] then changed his
answer on the plea form to indicate that he was satisfied with
his lawyer's advice, informing the judge that he was 'freely and
voluntarily' doing so") (brackets omitted).

    [9]  Moreover, Petitioner cannot claim that the explanations
provided to him were beyond his comprehension in light of his low
intellectual abilities.  See Lupinacci, 2013 WL 275896, at *4
("The [PCR] judge noted that [Petitioner] has an associate's
degree in mechanical engineering and a master's license in
navigation, and that he is more educated than most defendants").

right to remain silent and his right to cross-examine witnesses,
and if he understood the penalties he faced as a result of a
conviction. [Petitioner] answered all of those questions in the
affirmative").

Moreover, not a single sentence in the amended petition
indicates that Petitioner meant to *insist* on going to trial.  See
generally, Docket Entry No. 4.  If anything, the state court
record establishes Petitioner's desire to *avoid* the risk of
trial.  See Lupinacci, 2013 WL 275896, at *2-4 (Petitioner's plea
hearing statements reflecting his realization that, if the plea
offer is withdrawn, he "can go down the tubes then, big time."
Clarifying that very notion, Petitioner stated: "The thing is if
I don't go for the deal, I'm going to get screwed in plain
English.  [I can] lose everything. [If I go for a trial, I can be
sentenced to] twice as much as I'm facing [under the plea deal].
So, I'm cutting my losses.  And taking the deal") (ellipses
omitted).

And, finally, not a word in the amended petition or in the
underlying state record suggests that Petitioner insists – or
ever insisted – on his innocence.  See generally, Docket Entry
No. 4.  Hence, under Cedeno and Premo, this Court is obligated to
presume that Petitioner could not have been prejudiced by his
plea deal, because – had he decided to go to trial – he would
have been convicted.  In light of the foregoing, Petitioner's

19

speculative assertion that he was "not afforded the full understanding of the situation to make a reasonable decision" merits no § 2254 relief, and his Petition is subject to dismissal in its entirety.

However, solely out of an abundance of caution, this Court will allow Petitioner an opportunity to establish that his plea was not knowing, intelligent or voluntary in the event Petitioner pleads *already-known-to-him clear and convincing evidence establishing* that: (a) he was not informed of direct consequences of his plea deal by his counsel, and that alleged oversight was not cured by the explanations provided by the trial judge; (b) he was insisting on going to trial and accepted the plea that he took solely because of the aforesaid oversight; and (c) he continuously insisted on his innocence.[10]

Therefore, this Court will retain temporary jurisdiction over this matter so to allow Petitioner one final opportunity to

_____

[10]   This Court stresses that Petitioner cannot assert self-serving conclusions in lieu of the facts that amount to clear and convincing evidence.  "Habeas corpus petitions must meet heightened pleading requirements," McFarland v. Scott, 512 U.S. 849, 856 (1994), and Habeas Rule 2(c) requires a petitioner to "state the facts supporting each ground."  28 U.S.C. § 2254 Rule 2(c)(2); cf. In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (explaining that "factual allegations" are descriptions of "the who, what, when, where, and how: the first paragraph of any newspaper story").

plead such facts, if any.[11]  In the interim, this Court will: (a) direct Respondent to file and serve upon Petitioner the entire underlying record of Petitioner's direct appellate and collateral proceedings in state courts; (b) direct the Clerk to change Respondent's designation from the "State of New Jersey" to the "Warden of Petitioner's Correctional Facility";[12] (c) deny Petitioner a certificate of appealability, see Miller-El v. Cockrell, 537 U.S. 322 (2003), since jurists of reason would not disagree with this Court's resolution of Petitioner's claims, as pled; and (d) direct the Clerk to administratively terminate this matter.[13]  An appropriate Order follows.


                            s/Renée Marie Bumb
                            **RENÉE MARIE BUMB**
                            **United States District Judge**

Dated: February 6, 2015

_____

    [11]  Petitioner is expressly cautioned against asserting any other challenges, since Petitioner's filing of the amended petition in response to this Court's Mason notice barred Petitioner from raising any further claims without leave from the Court of Appeals.  See Boretsky v. Ricci, No. 09-0771, 2012 U.S. Dist. LEXIS 37239, at *12-14 (D.N.J. Mar. 20, 2012).

    [12]  See Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004).

    [13]  See Papotto v. Hartford Life & Accident Ins. Co., 731 F.3d 265 (3d Cir. 2013) ("administrative closings [are not final dismissals on the merits; rather, they] are a practical tool used by courts to prune overgrown dockets and are particularly useful in circumstances in which a case, though not dead, is likely to remain moribund").